[*376]   *THE PEOPLE *against* PLEAS AND CLARK.

A. died intestate, leaving a widow and seven children, who were all minors,
in 1784, except one. A suit having been commenced in 1783, against the
widow, as tenant in possession, under a lease for lives, the administrator,
in 1784, after advising with counsel, and with the consent of the widow,
and one of the heirs, who was of age, surrendered the lease, supposing it to
be forfeited, for 750 dollars, though, in fact, it was worth a much larger
sum. As no release or conveyance was executed by the administrator, the
heirs afterwards brought an action of *ejectment* in the name of the adminis-
trator, to recover the possession of the leasehold estate ; and the administra-
tor, in 1799, executed a release of the estate, and also of the action, in con-
sideration of the 750 dollars, before received, though he then believed that
the property belonged to the heirs, and was not forfeited.
In an action brought on the administration bond, alleging a *devastavit*, it was
held, that the administrator was justifiable in surrendering the lease, in
1784, in the manner he did, under the circumstances ; but that, in 1799,
when he was satisfied that he had acted under a mistake, he ought not to
have executed a release of the estate, and of the action brought for the
benefit of the heirs, but have left the lessor to resort to chancery to enforce
the contract ; and, on this ground, he was chargeable with a *devastavit*,
for the difference between the sum received on the surrender, and the real
value of the estate.

THIS was an action of debt, on an administration bond
executed in the usual form. The defendant, Pleas, and Sil-
vanus Pine, deceased, were administrators of Amos Pine, de-
ceased.

The defendants, after craving *oyer* of the bond and con-
dition, pleaded performance generally. The plaintiff replied,
stating breaches and charging the defendant, Pleas, with a
*devastavit*. The bond was put in suit in behalf of the chil-
dren of the intestate, who were entitled to distributive
shares.

The trial was on the issue *devastavit vel non*. It was
proved on the part of the plaintiff, that the intestate died pos-

sessed of goods and chattels, and among other *assets* that came to the hands of the defendant, Pleas, was a lease for three lives, made by Henry Beckman to the intestate, for certain lands in Dutchess county ; and that two of the lives remained at the death of the intestate.

The lease was worth in 1784 from 1250 to 1750 dollars. The intestate left a widow and seven children, who were all minors in 1784 except one.    About the year 1783, a suit was commenced against the widow, as tenant in possession, to recover the leasehold estate ; and her counsel considering the suit indefensible, and the administrator, after advising with the widow, such of her children as were of age, to wit, John, who was *of age, and Lilly, who was    [*377]. not, and also with their counsel, in or about the year 1784, agreed to surrender the lease to Thomas Tillotson, who claimed the fee for 750 dollars; which was done, and the money paid and appropriated for the use of the heirs of the intestate.    The widow consented to the transaction, under an impression that the lease was forfeited.

As no release or conveyance of the premises had been executed by the administrator, the heirs, previous to the year 1799, brought an *ejectment* in the name of the administrator for the recovery of the leasehold estate ; and when the cause was ready for trial, in June, 1799, the administrator executed a release both of the action and the estate to the grantee of Thomas Tillotson, in consideration of the 750 dollars, before received.    A short time before the execution of the release, the administrator declared, that he believed the property belonged to the children of the intestate.    The widow and the two eldest children in 1789 executed a bond of indemnity to the administrator, for what he had done in respect to the premises.

Upon these facts, the judge charged the jury, that as the surrender of the lease in 1784 upon a composition with the claimant, for 750 dollars, was made by the administrator after consulting counsel, and pursuant to his advice, and with the consent of the widow and such of the family as

were of age, it ought to exempt him from the charge of a *devastavit ;* and that the release in 1799 being done in performance of the former agreement, was rightfully done.

The jury found a verdict for the plaintiffs for nominal damages ; and the case was reserved for the opinion of the court.

A motion was made for a new trial, for the misdirection of the judge.

[*378]     *Riggs,* for the plaintiffs.

*E. Livingston,* contra.

KENT, J. delivered the opinion of the court. It seems to be a just inference from the facts, that the act of the administrator in 1784, in entering into a composition with the claimant for the leasehold estate for 750 dollars, was an act done in good faith, and one that appeared to him, at the time, to be for the interest of the heirs of the intestate. The counsel who was consulted, advised it, on the ground that the recovery of the claimant could not be resisted ; and the widow, who was entitled to one-third of the value of the lease, and the son, who was of age, and entitled to one-seventh of the same, acquiesced therein ; and their approbation of the conduct of the administrator as being at the time judicious and honest, is to be also inferred from the bond of indemnity which they executed to him five years afterwards.

Under these circumstances, it appeared to me at the trial, and does still, that the administrator ought not to suffer for the surrender of the lease in 1784 ; and that the decision of the court of chancery in the case of *Blue* v. *Marshall and wife,* (3 P. Wms. 381,) goes to the point of his protection. That was a bill filed by a legatee against an administrator, with the will annexed, to account for 200*l.* and it appeared that the testator was possessed of a term for sixty years, which he had leased for thirty years, at the rent of 100*l.* per annum, and that at the time of the testator's death, there was 125*l.* of rent in arrear, which soon amounted to 225*l.* and the tenant becoming insolvent, the administrator, without consulting the legatee, released to the tenant the arrears of rent, amounting to 225*l.* and also advanced him 20*l.* out of

his own pocket, upon condition that he should quit the possession, which was accordingly done. On *these facts it was insisted for the complainant, that [*379] as the administrator had voluntarily released the debt of 225*l.* and that too without consulting the plaintiff, the legatee, he ought to answer for it. But Lord Chancellor Talbot decreed, that the administrator had done nothing but what was prudent; and that, as the tenant was unable to pay, and might, if he choose, be vexatious, and have put his landlord to great trouble and delay, the release seemed to be for the benefit of the testator's estate; and he accordingly excused the administrator from the payment of the debt released, and even allowed him the 20*l.* he had advanced out of his own pocket, as being one entire consideration for the tenant's quitting the possession.

It appears to me that the circumstances constituting the defendant's excuse in the present case, are full as strong as in the case I have cited. But the next question is, that no release was, in fact, executed by the defendant, and as he became satisfied, afterwards, as appears by his own declaration, that the leasehold estate was not forfeited, but belonged to the heirs of the intestate, was he justifiable in acting again, to complete the contract?

In my present view of the subject, he was not. There were circumstances in the year 1799, sufficient to satisfy the defendant, and which did satisfy him that the original agreement was founded on mistake. The consent to surrender the lease in 1784 was made under the impression that the lease was forfeited, and that a defence would be unavailing. When it was afterwards discovered that the lease was not forfeited, or the defendant had reason to conclude so, he ought to have desisted from any farther interference, and have left the claimant to resort to chancery for the execution of the contract. There the truth could be investigated. Nor ought he to have arrested the suit at law, instituted for the benefit of the minor children, and to determine to *whom the estate legally belonged. Acting as [*380]

trustee for others, he was under obligation not to carry the original agreement into effect, after he had become satisfied that it had originated on his part in mistake, and upon the presumption of a fact which did not exist. So far from carrying into execution such an agreement, a court of equity will relieve against contracts founded in mistake and imposition. The case of *Cocking* v. *Pratt*, (1 Vesey, 400,) is very applicable to the present case. A. dying intestate, left a widow and a daughter, who entered into an agreement concerning the personal estate. Afterwards the representative of the daughter brought a bill to set aside the agreement, and obtain a just distributive share. The mother insisted on the agreement; but Sir John Strange, the Master of the Rolls, held, that the daughter did not intend at the time of the agreement to take less than her legal share, though what that was did not clearly appear to her. Whether there was a *suppressio veri* did not appear, but as the daughter had, no doubt, intended to take her full share, and it appearing afterwards that she had not taken all she was entitled *to*, and that the difference was very considerable, the agreement was set aside.

In the present case, the administrator appears to have discovered that the estate which he had formerly agreed to surrender, under the impression that it was forfeited, was not forfeited, but belonged to the heirs of the intestate; and that instead of receiving a composition price, the heirs was entitled to the full value of ·the estate. Here then was a *locus penitentiæ* for the administrator; and his subsequent act, after that discovery, in releasing the action and the estate, must be adjudged wilful, and done in fraud. He became, therefore, properly chargeable with a *devastavit* to the amount of the difference between what he originally took for the estate, and what was its real value.

[*381]     *On this ground I am now satisfied, the direction to the jury, and their finding, were wrong ; and that

the verdict ought to be set aside, and a new trial awarded, with costs to abide the event of the suit.

RADCLIFF, J. absent.

New trial granted.(a)

(a) See Williams on Executors, 1278, 1279, 1281–1284.