The opinion of the court was delivered by
Tilghman, C. J.
This is an appeal from the Orphans’ Court, on the settlement of the account of Joseph Clemson, one of the executors of his brother James Clemson, deceased. James Clemson appointed four executors, viz. his brother Joseph Clemson, Ellis Davis, Charles Bird, and JacobS. Wain. Davis and Bird renounced, and Joseph Clemson and Jacob. 8. Wain, acted, and settled separate accounts. Joseph Pusey, the appellant, is one of the residuary devisees of James Clemson, the testator. Fourteen exceptions were taken to the settlement of the account in question, of which the 6tb, Sth, 9th, 11th, and 13th, have been relinquished. All the others the appellant has endeavoured to support.
1. The appellee has not charged himself with a debt of 500 dollars, and the interest thereon, which he acknowledges to have been due from him to the testator, because he supposes that the debt was extinguished by the appointment of him as an executor. In this he is clearly mistaken. When a debtor is appointed executor, the debt is extinguished in law,, because he cannot bring suit against himself. But it is assets, and as such, he is accountable for it to creditors. And where, as in this case, the testator has devised the residue of his estate to others, the executor is considered in equity, as a trustee for the residuary devisee, to the amount of the debt due from him. The case has been carried even further. For where the testator gave legacies to his brother and nephew, who were indebted to him in different sums, and appointed them executors of his will, and made no disposition of the residue, these debts were declared to be a trust for the next of kin, the *209 Lord Chancellor observing, u that he thought it a settled point in the Court of Chancery, that the appointment of the debtor executor, was no more than parting with the action.” Bac. Ab. Appen. vol. 1 p. 533, a. No. 10. Joseph Clemson must therefore be charged with this debt and interest.
The 2d, 3d, 4th, and 5th exceptions, are to the allowance of a commission of 5 per cent, to the executor, on the whole amount of the money received by him. The 4th exception is admitted to be good, as it points out a palpable error in the charge of commission, and shows what little consideration this account must have undergone in the Orphans’ Court. The executor settled two accounts. In the first, he was allowed a commission of 5 per cent, on his whole receipts, and a balance of upwards of 5000 dollars, which appeared against him, was carried to his second account. In this second account, in which the estate was credited with the balance of the first, the executor was allowed a commisson of 5 per cent, on the balance, as if it had been money received by him. This was a plain oversight both in the accountant and the court, and must now be rectified. The other three exceptions to the allowance of 5 per cent, commission, require very serious consideration.- It is a subject on which there has been great difference of opinion. And it is no wonder: for the law has fixed no certain compensation, nor is it possible for the court to establish a rate of commission which shall do justice in all cases. An executor should receive a compensation adequate to his care and trouble, besides a liberal allowance for all necessary expenses. But. it would be debasing the sanctity of the trust, to consider it as an office of profit. It is an honourable duty, which ought not be undertaken from motives of mere gain. Still, it is not to be expected, that executors should sacrifice their time, and subject themselves to hazard, without some remuneration But the difficulty is in fixing the quantum. It is very desirable, both for the sake of the executors, and the family of the testator, that there should be some standard to which both may look, on the subject of commissions. And in the cases which generally occur, it appears to me, after considerable research, that the common opinion and understanding of this country, has fixed upon 5 per cent, as a reasonable allowance. But to this rule there must be exceptions. There are estates, where the total amount is small, and that too, collected in driblets. In such, 5 per cent, would be insufficient. ' On the contrary, there are others, where the total being very large, and made up of sums collected and paid away in large masses, 5 per cent, would be too much. It must be left to the discretion of the courts, to ascertain those cases in which the general rule should be departed from. The personal care and anxiety of the executor, is a fair subject of consideration. An estate not equal to the payment of its debts, is always attended with hazard, which should not be forgotten in fixing the compensation. I have carefully examined the ac *210 .count on which the present dispute arises, and am of opinion, that, it should be considered as an excepted case. In order to explain the reasons on which this opinion is founded, I shall consider the separate accounts of the two executors, as one. On the subject of commissions, there is no difference between them. Both depend on the same principles; and I understand, that the executors themselves consider the aggregate of the commission in both accounts, as a whole, to be equally divided between them. In the. first place then, we perceive an estate, which'at a round sum-, may be called 100,000 dolllars. In the next place, there was no hazard óf a de-vastavit from misapplication of assets, through ignorance of the law; the estate being much more than equal to the debts of the testator. There have been law suits in which large sums have been recovered. But the trouble has fallen principally on the counsel employed for the executors, for whose reward, a very liberal allowance has been made. All the expenses of the executors have also been paid, over and above their commissions. But what weighs-most with me, is the manner in which the money came to the hands of the executors. In order to show that the trouble was remarkably little, I must enter into some detail. Joseph Clemson reserved about 12,400 dollars, of which about 9400 consisted only ai five items. He took goods of the estate at the appraised value, amounting to about 500 dollars, and received the residue of the 9,400 dollars, in four payments, each of which was above 1200 dollars, and one of them 4,925 dollars. In looking into Jacob S. Wain’s accounts, we find, that in his first account, amounting to 58,000 dollars, and upwards, he received more than 49,000 dollars in large payments. There were four payments, of between 1,500 and 3,000 dollars each, six of between 4 and 8,000 each, and one of 10,000 dollars. In his second account, amounting to 35,000 dollars, and upwards, the receipts are likewise, in sums uncommonly large. There are other circumstances against a large commission in this case. There was a sale of real estate, which cost but little trouble to the executors, and a remittance to them of the proceeds of a mortgage in New York, which cost still less. Moreover, the estate has been burthened with very considerable sums paid to agents and attorneys who have had all the trouble of collecting large debts, and the executors have in some instances had little to do but to receive the money. Such accounts occur but very rarely. If in general, 5 per cent, may be deemed a reasonable allowance, it certainly cannot be so here. Considering all circumstances, it appears to me, that 3 per cent, would be quite sufficient, and that is the rate.at which I am of opinion it should be fixed.
7. The 7th exception is, “that the executor has not chargéd himself with interest on monies remaining in his hands, but has charged the estate with interest on a certain legacy, left to him, as he alleges, by his father’s will.” If the fact be so, it is an error which must be corrected. The accounts must be examined, befoie *211 our decree is drawn up, and this exception will then be attended to.
10. The 10th exception is, “ that the executor has not charged himself with the amount of the mortgage for 900 dollars, and interest, given by Flag Bacon and wife, to Joseph L. Dickerson, the amount of which mortgage, with interest, was received by the executor.” The appellant has not made good his assertion, that this money was received by the execufor. Nothing like it has been proved. On the contrary, it is evident, that it has not been received, and the appellant has shifted his ground, and endeavoured to throw the burthen of this debt on the executors, on account of their negligence. But the charge of negligence has not been proved to the satisfaction of the court. It appears that the mortgage was defective for want of being recorded; and this defect existed in the life of the testator. In that respect, there is nothing to blame in the conduct of the executors. It appears too, that pains have been taken to recover the money, but without success. And finally the executors despairing of a recovery, by reason of the insolvency of the debtors, made a compromise to the best of their judgment, by which they have secured to the estate of the testator, some real estate in the Northern Liberties of Philadelphia. If the compromise was intended for the benefit of the estate, and has actually been for its benefit, (and from the evidence, I incline to think that such was the case,) the executor ought not to be charged with the debt. This principle has been sanctioned in Chancery, in the case of Blue v. Marshall, 3. P. Wms. 381., and The People v. Pleas, &c. 2 Johns. Cas. 378. I am of opinion, therefore, that this exception has not been supported.
12. The 12th exception relates to sundry shares in the Har-risburgh Bridge Company, Centre Turnpike Company, and Susquehannah and York Turnpike Company. There is no dispute on the subject of this exception. The executors acknowledge that they have the certificates for these shares, and are willing to account for them.
14. The 14th and last exception is, to the sum charged by the executors for fees paid to counsel for advice as to the mode of stating the account. There is no objection to the charge of twelve dollars, paid to an attorney for stating and preparing the account. Whoever examines the account will find, that very liberal allowances have been made to the executor, for fees paid to counsel, on the business of the estate. As to stating the account which is to be exhibited to the Register of wills, it has been usual to make a small allowance to the executor, because, he is not supposed to be conversant of the form in which it is to be drawn. But he may want advice for his own satisfaction, which may not be for the benefit of the estate, and with which therefore the estate ought not to be burthen-ed. I have known many instances, where executors have endea-voured to avail themselves of the advice of counsel, for their own benefit, and to the prejudice of the estate. In the present instance, *212 I think twelve dollars sufficient for any assistance of which the executor was in need, in staling the account. Beyond that sum, therefore, the exception is allowed.
These are the principles, on which the court will decree in this cause, and the account must be rectified so as to be conformable to them.